UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES FLORENCE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>APHRIA INC., VICTOR NEUFELD, and CARL MERTON,<br><br>Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff James Florence ("Florence" or "Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys for Plaintiff's Complaint against Defendants Aphria Inc., Victor Neufeld, and Carl Merton (collectively, "Defendants"), alleges the following based upon personal knowledge, as to Plaintiff and Plaintiff's own acts, and upon information and belief, as to all other matters, based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Aphria Inc.'s ("Aphria" or "the Company") press releases, Securities and Exchange Commission ("SEC") filings, analyst reports, media reports, and other publicly disclosed reports and information about the Defendants. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE AND SUMMARY OF THE ACTION

1.  This is a securities class action on behalf of Plaintiff and all other persons or entities, except for Defendants, who purchased or otherwise acquired Aphria securities via U.S. exchanges between July 17, 2018 and December 4, 2018, inclusive (the "Class Period"). This action is brought on behalf of the Class for violations of §§10(b) and 20(a) of the Securities

Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5.

2. Aphria is a company amalgamated under the laws of the province of Ontario, Canada and is headquartered in Ontario, Canada. In the United States, Aphria's common stock traded over-the-counter on the OTCQB Venture Market exchange under the symbol "APHQF" until November 2, 2018, when it started trading on the New York Stock Exchange ("NYSE") under the ticker symbol "APHA."

3. Aphria is a global cannabis company.

4. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) certain of the Company's recent Latin American acquisitions were worth far less than represented; (ii) the Company was engaged in undisclosed self-dealing; (iii) the quality of Company's cannibus was inferior to competitors; and (iv) as a result of the foregoing, Aphria's public statements were materially false and misleading at all relevant times.

5. On December 3, 2018, before the market opened, a report was issued on Aphria by Quintessential Capital Management and research firm Hindenburg Research (the "Hindenburg Report"). According to the Hindenburg Report, Aphria is "A Shell Game with a Cannabis Business on the Side." Specifically, the Hindenberg Report alleges, among other thigns, that Aphria's recent Latin American acquisitions are suspect, it engages in undisclosed self-dealing, and its product is inferior.

6. On this news, the Company's share price fell $1.85 on December 3, 2018, from its previous close of $7.90, to a close price of $6.05, a drop of over 23%. On December 4, 2018, the stock price fell another $1.54, or over 25%.

7. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the Exchange Act (15 U.S.C. §78aa).

10. Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b). Defendants' false and misleading statements and omissions were disseminated in this District. Aphria's common stock is listed on the NYSE, a national securities exchange. Therefore, the alleged illegal conduct was carried out, in part, in this judicial District.

11. In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the U.S. mail, interstate telephone communications, and facilities of the national securities exchange.

## PARTIES

12. As set forth in the attached Certification, Plaintiff acquired Aphria securities at artificially inflated prices during the Class Period and was damaged due to the federal securities violations and related misstatements alleged herein.

13. Defendant Aphria is incorporated in Canada, with headquarters located in Ontario, Canada. Aphria common stock trades on the NYSE under the ticker symbol "APHA."

14. Defendant Victor ("Vic") Neufeld ("Neufeld") has served at all relevant times as the Company's Chairman and Chief Executive Officer ("CEO").

15. Defendant Carl Merton ("Merton") has served at all relevant times as the Company's Chief Financial Officer ("CFO").

16. The Defendants referenced above in ¶¶14-15 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements Issued During the Class Period

17. Aphria produces, supplies, and sells medical marijuana.

18. On July 17, 2018, Aphria announced its plans to acquire "industry-leading companies in Colombia, Argentina, Jamaica and a right of first offer and refusal in respect of Brazil through a definitive share purchase agreement . . . with Scythian Biosciences, Inc. ("Scythian"). Aphria will acquire 100% of the issued and outstanding common shares of LATAM Holdings Inc. ("LATAM Holdings"), a direct, wholly-owned subsidiary of Scythian." In a press release, the Company stated, in relevant part:

> **Highlights of the Transaction include:**
>
> - Solidifies Aphria's leadership position in the global cannabis industry
>
> - Provides Aphria with world class assets in the most advanced regulatory jurisdictions across LATAM and Caribbean markets, from which it can further grow and expand its international operations
>
> - Strengthens Aphria's leading international management team with the addition of proven local LATAM and Caribbean executives
>
> - Establishes Aphria's presence in the most advanced strategic market in South America, Colombia

4

- Gains first mover advantage in Argentina for eventual in country cultivation

- Acquires market leadership in Jamaica with the only producing Tier 3 cultivator license in the country

- Yields strategic rights to potentially expand into Brazil, the largest population in South America

- Delivers accretive cash flow beginning in calendar 2019

**Colombia – Strategic Launch Pad into South America**

Colcanna S.A.S. ("Colcanna" or the "Colombian Company"), will be the first company in the Coffee Zone of Colombia with cultivation and manufacturing licenses for the production of medicinal extracts of cannabis, a research license and a license for the production and extraction of cannabis, including cannabis oil, for domestic use and for export. It is in the advanced licensing stages for a THC license.

Unlike the former Guerilla territory where other global cannabis companies have focused their investments, the Coffee Zone has always been a land of peace, high productivity and progress. Colcanna sits on 34 acres of highly fertile, predominately flat land, which is essential for the optimal cultivation of cannabis. As a result, greenhouses will occupy more than 20 acres of the property and, with 6 harvests per year and two natural sources of water for irrigation, Colcanna is expected to achieve an initial annualized production of 30,000 kg, growing to 50,000 kgs but with access to the country's micro-scale growers, suitable for supplying the country and the region with high-quality medical cannabis.

**Argentina – First Mover Advantage**

ABP, S.A. ("ABP" or the "Argentinean Company") is an established and successful pharmaceutical import and distribution company that holds a series of licenses, including for the import of CBD oil, notably the first company in Argentina to have received this license.

The Argentinean Company operates a pharmaceutical distribution warehouse and retail pharmacy and distributes to an extensive network of pharmacies, distributors, government clinics and hospitals throughout Argentina. ABP also holds agreements with the Top 20 health insurance companies, a strategic advantage in reaching patients accessing Argentina's free public healthcare system.

ABP is at the forefront of in-country medical cannabis research and clinical trials with two significant Medical Cannabis Cooperative Agreements. The Argentinean Company has partnered with Hospital Garrahan, a leading pediatric hospital in Buenos Aires, for a clinical study on the treatment of refractory epilepsy in

children, and with Universidad Nacional De La Plata to support advances in medical cannabis research and education.

**Jamaica – Only Producing Commercial Tier 3 License**

Marigold Projects Jamaica Limited ("Marigold" or the "Jamaican Company") has been granted several key licenses by the Jamaican Cannabis Licensing Authority, including:

- A Tier 3 license to cultivate more than five acres of land with cannabis for medical, scientific and therapeutic purposes. This license is the highest level of license available in Jamaica, and currently only one other company has been approved for a Tier 3 license;

- A conditional Tier 2 license to process cannabis for medical, scientific and therapeutic purposes, including the manufacturing of cannabis-based products, in a space of over 200 square meters;

- A conditional herb house retail license to sell cannabis products for medical, scientific and therapeutic purposes, with a space for immediate consumption by consumers, including tourists;

- A conditional therapeutic retail license to provide therapeutic or spa services utilizing cannabis products; and

- A conditional R&D license.

Lloyd Tomlinson will continue as Marigold's Managing Director and will be appointed Director, Jamaica Operations at Aphria International. Mr. Tomlinson, a Jamaican native, has more than 20 years' experience in the pharmaceutical industry and as the CEO of Blue Manhoe Estate he became the third-generation of his family to run the family's coffee business. In 2014, Mr. Tomlinson made history when he launched Timeless Herbal Care, Jamaica's first medical cannabis company.

**Brazil – Strategic Option for Major Market**

The Company also remains focused on identifying the most attractive emerging opportunities through the region, including in Brazil where, as a result of the Transaction, the Company will receive a right of first offer and refusal (collectively the "Rights") in respect of a majority interest, upon the receipt of a license, in the entity receiving the license. With a population over 200 million and a comprehensive National Healthcare System, Brazil is poised to become an important market for medical cannabis, and Aphria's regional and corporateleadership remain connected to the rapidly evolving opportunity in Brazil.

19.     On September 27, 2018, Aphria announced that it had closed the acquisition of LATAM Holdings Inc. ("LATAM"). As a result of the definitive share purchase agreement, the Company acquired:

- A 90% ownership interest in Colcanna S.A.S.;
- ABP, S.A.;
- A 49% ownership interest in Marigold Projects Jamaica Limited; and
- A right of first offer and refusal in respect of a majority interest in a Brazilian entity, upon the receipt of a license, in the entity receiving the license.

20.     On October 18, 2018, Aphria filed a Form 40-F registration statement (the "Registration Statement") with the SEC. The Registration Statement incorporated 152 exhibits by reference. The Registration Statement was signed by Defendant Merton.

21.     In Exhibit 99.133, Aphria incorporated the September 27, 2018 press release that announced the closing of the LATAM acquisition. In that release, the Company stated, in part:

> As a result of the Transaction, the Company has solidified an important foothold in Latin America and the Caribbean by acquiring industry-leading cannabis-related companies in Colombia, Argentina and Jamaica as well as a right of first offer and refusal in respect of a majority interest in a Brazilian entity seeking a cannabis cultivation and sales license.

Also in that release, CEO Neufeld stated, in part, "'This acquisition firmly cements Aphria's leadership in the region and on the global cannabis stage.'"

22.     On October 30, 2018, Aphria issued a press release, titled "Aphria to Commence Trading on the NYSE on November 2." In that release, CEO Neufeld stated: "'We are excited to usher in a new era with the recent legalization of adult-use cannabis in Canada and as we aim to further expand our footing in exciting markets such as Latin America, the Caribbean and Europe. Aphria is well-positioned to capitalize on this fast-growing industry.'" Also, in that release, the Company further stated, in part:

Aphria has been setting the standard for the low-cost production of safe, clean and pure pharmaceutical-grade cannabis at scale, grown in the most natural conditions possible. Focusing on untapped opportunities and backed by the latest technologies, Aphria is committed to bringing breakthrough innovation to the global cannabis market. The Company's portfolio of brands is grounded in expertly-researched consumer insights designed to meet the needs of every consumer segment. Rooted in our founders' multi-generational expertise in commercial agriculture, Aphria drives sustainable long-term shareholder value through a diversified approach to innovation, strategic partnerships and global expansion, with a presence in more than 10 countries across 5 continents.

23. The Company repeated the latter statement (*supra* ¶22) in subsequent press releases issued on November 1, 2, 5, and 7, 2018.

## The Truth Emerges

24. On December 3, 2018, pre-market, the Hindenburg Report was issued. The Hindenburg Report revealed that: (i) "Aphria's recent C$280m Latin American acquisitions raise major red flags"; (ii) "Aphria insiders were likely undisclosed beneficiaries of the deals"; (iii) "upwards of C$700m" was diverted to investments "via such transactions" that are, at best, grossly inflated; (iv) "Aphria consistently generates negative cash"; and (v) Aphria's cannabis is of "low quality."

25. Specifically, the Hindenburg Report found that "[t]he official registered office of Aphria's C$145m Jamaican acquisition is an abandoned building that was sold off by the bank earlier this year."

26. In addition, "Aphria's C$50m Argentine acquisition publicly boasted sales of US$11m in 2017." However, the Hindenburg Report asserts that "[a] worker at the company . . . affirmed that 2017 revenue was only US$430k."

27. The Hindenburg Report also summarized its findings that the Company's recent Latim America acquisitions were part of a series of transactions designed to enrich Company

insiders and that these acquisitions lacked established operations and/or licenses to operate in the cannabis industry. The report stated, in part:

> We believe Aphria has diverted shareholder assets to insiders through a systematic process:
>
> 1. Aphria insider Andy DeFrancesco sets up or acquires an international company, providing a token justification for an acquisition (e.g., conditional cannabis licenses, a leased facility, purchasing a small existing local business.)
> 2. The international company is then purchased by a Canadian shell company under the control of DeFrancesco through his closely held private equity firm, the Delavaco Group.
> 3. The shell company agrees to be acquired by Aphria's 'sister' company, Scythian Biosciences, where Vic Neufeld, Aphria's Chairman/CEO, and DeFrancesco hold key insider roles.
> 4. Scythian then sells its stake in the entity to Aphria at a large markup.
> 5. As a result, DeFrancesco and unnamed associates get cash and/or Scythian shares, Scythian gets cash and/or Aphria shares, and Aphria's shareholders get international assets that are essentially worthless.

28. The Hindenburg Report also asserted that, "[w]hile the [C]ompany declares itself to be 'setting the standard' for low-cost production, in reality it appears to be setting the standard for low-quality production." To back this up, the Hindenburg Report "share[s] the content of an interview with a former worker who detailed failed audits with Health Canada, a circus-like environment, and a facility that has had repeated issues with mold and is 'infested with bugs'."

29. On this news, the Company's share price fell $1.85 on December 3, 2018, from its previous close of $7.90, to a close price of $6.05, a drop of over 23%. On December 4, 2018, the stock price fell another $1.54, or over 25%.

30. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

31. Plaintiff brings this action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a Class consisting of all those who purchased or otherwise acquired Aphria securities on U.S. exchanges during the Class Period and were damaged upon the revelation of the alleged truth (the "Class"). Excluded from the Class are: Defendants herein; the officers and directors of the Company, at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns; and any entity in which Defendants have or had a controlling interest.

32. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Aphria securities were actively traded in the United States on the OTCQB Venture Market and NYSE. While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class. The members of the proposed Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using customary forms of notice that are commonly used in securities class actions.

33. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct.

34. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation. Plaintiff has no interest, antagonism, or conflict with the members of the Class.

35. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

  a. whether the federal securities laws were violated by Defendants' acts as alleged herein;

  b. whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations, and management of Aphria;

  c. whether the Individual Defendants caused Aphria to issue false and misleading financial statements during the Class Period;

  d. whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

  e. whether the prices of Aphria securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

  f. whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

36. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

37. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

  a. Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

  b. the omissions and misrepresentations were material;

  c. Aphria securities are traded in an efficient market;

  d. the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

  e. the Company traded on the NASDAQ and was covered by multiple analysts;

  f. the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

  g. Plaintiff and members of the Class purchased, acquired, and/or sold Aphria securities between the time Defendants failed to disclose, or misrepresented material facts, and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

38. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

39. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

### COUNT I
### Violations of §10(b) of the Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

40. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41. This Count is asserted against Defendants and based upon §10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

42. During the Class Period, Defendants engaged in a plan, scheme, conspiracy, and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices, and courses of business that operated as fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts, and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes, and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Aphria securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Aphria securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and Individual Defendants, took the actions set forth herein.

43. Pursuant to the above plan, scheme, conspiracy, and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases, and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Aphria securities.  Such reports, filings, releases, and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Aphria's finances and business prospects.

44. By virtue of their positions at Aphria, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff, and the other members of the Class, or in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

45. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Aphria, the Individual Defendants had knowledge of the details of Aphria's internal affairs.

46. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to, and did, directly or indirectly, control the content of the statements of Aphria. As officers and/or directors of a publicly held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Aphria's businesses, operations, future financial condition, and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases, and public statements, the market price of Aphria securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Aphria's business and financial condition, which were concealed by Defendants, Plaintiff and the other members of the Class purchased or

otherwise acquired Aphria securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities, and/or upon statements disseminated by Defendants and were damaged thereby.

47. During the Class Period, Aphria securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which Defendants made, issued, or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Aphria securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Aphria securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Aphria securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

48. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

49. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions, and sales of Aphria's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II
### Violations of §20 of the Exchange Act
### Against the Individual Defendants

50. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51. During the Class Period, the Individual Defendants participated in the operation and management of Aphria and conducted and participated, directly and indirectly, in the conduct of Aphria's business affairs. Because of their senior positions, they knew the adverse non-public information alleged herein.

52. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information, with respect to Aphria's financial condition and operations, and promptly correct any public statements issued by Aphria which had become materially false or misleading.

53. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases, and public filings that Aphria disseminated in the marketplace during the Class Period concerning Aphria's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Aphria to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Aphria within the meaning of §20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Aphria securities.

54. Each of the Individual Defendants, therefore, acted as a controlling person of Aphria. By reason of their senior management positions and/or being directors of Aphria, each of the Individual Defendants had the power to direct the actions of and exercised the same to cause Aphria to engage in the unlawful acts and conduct complained of herein. Each of the

Individual Defendants exercised control over the general operations of Aphria and possessed the power to control the specific activities that comprise the primary violations about which Plaintiff and the other members of the Class complain.

55. By reason of the above conduct, the Individual Defendants are liable pursuant to §20(a) of the Exchange Act for the violations committed by Aphria.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Declaring that the instant action may be maintained as a class action under Fed. R. Civ. P. 23 and certifying Plaintiff as the Class Representative;

B. Awarding Plaintiff and the other members of the Class compensatory damages;

C. Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs and disbursements; and

D. Awarding Plaintiff and the other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: December 7, 2018        **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

　　　　　　　　　　　　　　　　　 /s/ Thomas L. Laughlin, IV
　　　　　　　　　　　　　　　　Thomas L. Laughlin, IV
　　　　　　　　　　　　　　　　Rhiana L. Swartz
　　　　　　　　　　　　　　　　The Helmsley Building
　　　　　　　　　　　　　　　　230 Park Avenue, 17th Floor
　　　　　　　　　　　　　　　　New York, NY 10169
　　　　　　　　　　　　　　　　Telephone: 212-223-6444
　　　　　　　　　　　　　　　　Facsimile:  212-223-6334
　　　　　　　　　　　　　　　　Email: tlaughlin@scott-scott.com
　　　　　　　　　　　　　　　　　　　　　rswartz@scott-scott.com

　　　　　　　　　　　　　　　　*Attorneys for Plaintiff James Florence*

## CERTIFICATION PURSUANT TO THE FEDERAL SECURITIES LAWS

I, James Florence, hereby certify that the following is true and correct to the best of my knowledge, information, and belief:

1. I have reviewed the Complaint in this matter and authorize Scott+Scott Attorneys at Law LLP to file the Complaint on my behalf and lead plaintiff papers in this matter.

2. I am willing to serve as a representative party on behalf of the purchasers of Aphria, Inc. securities during the Class Period, including providing testimony at deposition and trial if necessary.

3. During the Class Period, I purchased and/or sold the security that is the subject of the Complaint, as set forth in the attached **Schedule A**.

4. I did not engage in the foregoing transactions at the direction of counsel nor in order to participate in any private action arising under the Securities Act of 1933 (the "Securities Act") or the Securities Exchange Act of 1934 (the "Exchange Act").

5. During the three-year period preceding the date of my signing this Certification, I have not sought to serve, or served, as a representative party or lead plaintiff on behalf of a class in any private actions arising under the Securities Act or the Exchange Act.

6. I will not accept any payment for serving as a representative party on behalf of the Class beyond the *pro rata* share of any recovery, except for such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at GDYNIA, POLAND on the 7 of December, 2018.
(city, state)

_____
James Florence

# Schedule A

**APHRIA INC**          Ticker: APHA          Cusip: 03765K104

Class Period: 07/17/2018 to 12/04/2018

**James Florence**

| | DATE | SHARES | PRICE |
|---|---|---|---|
| **Purchases:** | 9/20/2018 | 1,000 | $14.66 |
| | 9/25/2018 | 300 | $15.38 |
| | 9/26/2018 | 250 | $14.70 |
| | 9/27/2018 | 250 | $13.61 |
| | 9/27/2018 | 450 | $14.09 |
| | 10/1/2018 | 250 | $13.66 |
| | 10/2/2018 | 250 | $12.96 |
| | 10/4/2018 | 250 | $12.83 |
| | 10/18/2018 | 1,200 | $15.29 |
| | 10/22/2018 | 250 | $12.89 |
| | 11/1/2018 | 150 | $11.55 |
| | 11/9/2018 | 150 | $11.88 |
| | 11/9/2018 | 200 | $11.85 |
| | 11/12/2018 | 255 | $11.52 |
| | 11/13/2018 | 85 | $11.07 |
| | 11/14/2018 | 100 | $9.93 |
| | 11/14/2018 | 241 | $9.34 |
| | 11/26/2018 | 120 | $8.37 |
| | 11/27/2018 | 150 | $7.86 |
| | 11/28/2018 | 1,000 | $8.19 |
| | 12/3/2018 | 146 | $6.34 |
| | 12/3/2018 | 854 | $6.34 |
| | 12/3/2018 | 40 | $6.27 |
| | 12/3/2018 | 250 | $6.39 |
| | 12/3/2018 | 300 | $5.76 |

|  | Date | Quantity | Price |
|---|---|---:|---:|
|  | 12/3/2018 | 50 | $5.83 |
|  | 12/3/2018 | 200 | $6.09 |
|  | 12/3/2018 | 300 | $5.70 |
|  | 12/3/2018 | 260 | $6.26 |
|  | 12/4/2018 | 2,100 | $4.91 |
|  | 12/4/2018 | 2,100 | $4.74 |
| **Sales:** | 9/18/2018 | 387 | $15.75 |
|  | 9/19/2018 | 500 | $16.39 |
|  | 9/24/2018 | 1,000 | $14.80 |
|  | 10/3/2018 | 250 | $13.23 |
|  | 10/12/2018 | 250 | $15.20 |
|  | 10/15/2018 | 50 | $15.46 |
|  | 10/15/2018 | 250 | $15.45 |
|  | 10/16/2018 | 1,200 | $15.16 |
|  | 11/2/2018 | 150 | $12.14 |
|  | 11/9/2018 | 150 | $12.16 |
|  | 11/15/2018 | 241 | $10.04 |
|  | 11/16/2018 | 100 | $10.05 |
|  | 11/28/2018 | 1,000 | $8.32 |
|  | 12/3/2018 | 1,000 | $6.38 |
|  | 12/3/2018 | 250 | $6.48 |
|  | 12/3/2018 | 300 | $6.17 |
|  | 12/3/2018 | 300 | $5.86 |
|  | 12/4/2018 | 1,000 | $5.01 |
|  | 12/4/2018 | 1,100 | $4.95 |
|  | 12/4/2018 | 1,100 | $4.81 |
|  | 12/4/2018 | 1,000 | $4.73 |
|  | 12/4/2018 | 492 | $5.87 |
|  | 12/4/2018 | 218 | $5.90 |
|  | 12/4/2018 | 600 | $5.13 |